UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EERIK MEISNER                                                          )
        Plaintiff                                                        )
                                                                                  )
V.                                                                                  )
                                                                                  )
TOWN OF TISBURY, and CHIEF MARK                    )
SALOIO, in his Official and Individual Capacities   )
        Defendants                                                  )

## COMPLAINT

### INTRODUCTION

The Plaintiff, Eerik Meisner, brings this action seeking redress for substantial violations of his rights pursuant to the Federal Civil Rights Act, 42 U.S.C. § 1983, as well as under the Massachusetts Civil Rights and Whistleblower Acts, M.G.L. C. 149, § 185. The Defendants, individually and collectively have retaliated against him for reporting, objecting to, refusing to participate in, and filing complaints about what the Plaintiff reasonably believed were ongoing violations of law and ethical violations within the Town of Tisbury, specifically by Defendant Chief Mark Saloio ("Chief Saloio"). The Plaintiff brings claims for violations of the common law as well.

### JURISDICTION

The Plaintiff asserts federal jurisdiction under 42 U.S.C. § 1983, and pendent jurisdiction of his state law claims under 28 U.S.C. § 1367.

### PARTIES

1. The Plaintiff, Eerik Meisner, is an individual residing in Oak Bluffs, Dukes County, the Commonwealth of Massachusetts.

2. Defendant Town of Tisbury, is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts

3. The Defendant, Chief Mark Saloio (Hereinafter "Defendant Saloio" or "Chief Saloio"), is employed by the Tisbury Police Department, and currently holds the rank of Chief within the Department.

## FACTUAL ALLEGATIONS

4. Plaintiff, Eerik Meisner (Hereinafter "Plaintiff" or "Meisner"), was previously employed as a Police Officer for the Town of Tisbury ("the Town" or "Tisbury"), for approximately 6 years.

5. Plaintiff is, and has always been, a dedicated, energetic and hardworking employee. He is a respected member of the Tisbury Police Department (hereinafter "TPD") and has been an active participant within his community at large.

6. Prior to joining the Tisbury Police Department, Plaintiff worked for City of Titusville Police Department in Florida for twenty (20) years.

7. Throughout his career, Plaintiff has devoted himself to his law enforcement career, placing the public's safety at the forefront, and executing his responsibilities with honesty and integrity.

8. Plaintiff has always been a career law enforcement officer. He attended the FBI–LEEDA, also known as the Law Enforcement Executive Development Association in an effort to better himself as a police officer and further his policing career.

9. The FBI-LEEDA is aimed at advancing the science and art of law enforcement leadership and promotes the exchange of information to improve law enforcement management practices through training, education, and networking among police professionals across the United States.

10. Plaintiff successfully completed FBI-LEEDA's Supervisor Leadership Institute, Command Leadership Institute and Executive Leadership Institute and received the FBI-LEEDA Trilogy Award.

11. Plaintiff has never previously been disciplined during his 6 years of service as a member of the Tisbury Police Department.

12. Plaintiff was offered and served in the position of Lieutenant within the Town of Tisbury at the time he initially joined the TPD in June of 2013.

13. Plaintiff signed a three-year contract with the Town to perform the duties as Lieutenant and served as the second in command of the Department as the Executive Officer during his employment.

14. Police Chief Daniel Hanavan (hereinafter "Chief Hanavan") was the head of the TPD until his retirement in June of 2018.

15. In addition to his duties as the Executive Officer for the Town of Tisbury, the Plaintiff was also appointed to the position of Emergency Management Director for the Town of Tisbury.

16. The Plaintiff currently also holds a Master's Degree from the Massachusetts Maritime Academy in Emergency Management. This course of study was conducted on Plaintiff's days off from work and at his own expense. Plaintiff traveled off island to Waltham, Massachusetts to complete his coursework in Emergency Management.

### *Meisner's Whistleblower Activity*

17. In January of 2016, Plaintiff tore his quadricep while on duty and was out of work for approximately six weeks.

18. Upon his return to duty, Plaintiff was informed by Chief Hanavan, that a subordinate Officer Santon (hereinafter "Officer Santon") had stated to other officers, and to members of the Tisbury Board of Selectman, that the Plaintiff was involved in a domestic violence dispute that allegedly took place at the Martha's Vineyard airport.

19. The incident, according to Officer Santon, was supposedly witnessed by two on-duty West Tisbury police officers.

20. The allegations were completely fabricated. Plaintiff was proven to be off-island in Waltham at the time of the alleged incident. As a result of Officer Santon's false accusation and inappropriate conduct, Plaintiff filed a formal complaint with the Tisbury Police Department.

21. Officer Santon was formerly a roommate of previous Town of Tisbury Select Board member Tristan Israel (Hereinafter "Selectman Israel" or "Israel"). Selectman Israel and Officer Santon are close personal friends.

22. Despite the significance of Officer Santon's false accusations regarding the Plaintiff, his superior officer, and subsequently lying during the internal investigation of the matter, the Tisbury Select Board, at the direction of Selectman Israel, issued a one-day suspension to Officer Santon.

23. In most instances of proven accusations of untruthfulness by a law enforcement officer in the course of their duties result in termination from their employment.

24. Plaintiff was outspoken to a number of members of the TPD, including Chief Hanavan, and the Select Board about his belief that the personal relationship between Officer Santon and Selectman Israel created a conflict of interest and that Selectman Israel's involvement in the discipline of Santon was unethical, if not illegal.

25. In early 2017, Plaintiff met with Town Administrator Jay Grande (hereinafter "TA Grande") to discuss his employment contract with the Town of Tisbury.

26. Town Administrator Grande told Plaintiff that the terms outlined in his previous three (3) year contract would continue and that Plaintiff would be moved to the "management bracket" in the near future. Plaintiff continued to perform all of the duties and responsibilities of Lieutenant under the pre-existing terms of his contract with the Town.

27. Subsequently, in 2017, Chief Hanavan made the decision to terminate Officer Santon for an unrelated issue involving misconduct and untruthfulness.

28. As a result of Santon's termination, Selectman Israel became vocally antagonistic to Chief Hanavan and announced to the local newspaper that he wouldn't be reappointing Hanavan as Chief of Police when his contract expired.

29. Soon thereafter, Selectman Israel initiated an investigation of the Tisbury Police Department for 'management reasons' and demanded the Board hire Wasserman and Associates to conduct a study of the Department's activities.

30. The Plaintiff was subsequently informed by Town Administrator Grande that he would need additional formal training if Plaintiff wanted to become the next Tisbury Chief of Police.

31. TA Grande stated that he wanted Plaintiff to attend the Certificate Program offered by Suffolk University/MMA in Public Administration to meet this requirement for the Chief's position.

32. Plaintiff agreed to the training and graduated from the MMA Public Administration program in 2018.

33. In 2018, Sergeant Kindia Roman, a female Tisbury police officer, decided to leave the Tisbury Police Department to take a position with the Walpole Police Department.

34. Shortly after informing her co-workers that she would be transferring to the Walpole Police Department, members of the Walpole Police Department contacted the TPD as a reference.

35. Subsequently, Officer Roman's offer from the Walpole PD was rescinded, ostensibly based upon comments made by members of the Tisbury police department.

36. A complaint was subsequently filed regarding member(s) of the Tisbury Police Department that were overheard bragging that they had intentionally sabotaged, or "torpedoed," Officer Roman's candidacy with the Walpole Police Department.

37. As a result of the above complaint,,the Plaintiff was assigned to investigate the conduct of those involved in undermining the candidacy of officer Roman for employment with the Walpole police department.

38. Officer Roman had, at this time, also filed a complaint with the Massachusetts Commission Against Discrimination against the Town of Tisbury and specifically Tisbury Detective Maxwell Sherman. The substance of that complaint filed with the MCAD, documents the nature of the sexual harassment alleged by Officer Roman while a member of the Tisbury Police Department.

39. Plaintiff's investigation concluded that a member of the Tisbury Police Department had, in fact, intentionally and maliciously interfered with the hiring of Officer Roman by the Walpole Police Department.

40. During this same time period, Chief Hanavan announced his retirement from the Tisbury police department. Shortly thereafter the Town initiated a search committee to hire a new police chief.

41. Plaintiff submitted his application and resume to be considered by the Town's search committee for the Chief's position.

42. Plaintiff had significantly more policing experience than the other candidates, including his length of service to the Town of Tisbury and his personal knowledge of Martha's Vineyard.

43. Plaintiff was interviewed by the Town's search committee, and subsequently learned that the questions he was asked during his interview were different from the questions asked of the other candidates interviewed. Upon information and belief, the interviews of the candidate(s) for the Chief's position were not video recorded.

44. Prior to the hiring decision being made, the Tisbury Police Union drafted a letter to the Select Board supporting Plaintiff as their preferred candidate to fill the position of police chief. A letter from the Town's local school principal was also sent to the Select Board supporting the Plaintiff for the vacant Chief's position.

45. Ultimately, Mark Saloio, (hereinafter "Defendant Saloio") was selected as police chief of the TPD. Mr. Saloio had previously been a Lieutenant at the Sturbridge Police Department.

46. Plaintiff avers that his non-selection for the Chief's position was based upon his previous investigation of members of the Department who had wrongfully interfered with officer Roman's hiring by the Walpole police department, his support for officer Roman's MCAD complaint against the Town of Tisbury and conflict with Selectman Israel regarding the termination of Israel's friend, Officer Santon.

### *Meisner's Wrongful Termination*

47. Defendant Saloio began serving as Tisbury's Chief of Police in November of 2018.

48. Plaintiff had initially signed his "Lieutenant Contract" with the Town of Tisbury at the beginning of his employment with the Tisbury Police Department in 2013.

49. The Contract states:
*"Unless either party provides written notice to the other of its intention to renegotiate and/or not renew this Contract no less than twelve (12) months prior to the end of its initial or any extended terms, this Contract shall automatically be extended on the then applicable terms and conditions for an additional six (6) months time period. This Contract shall remain in effect during any period of negotiation."*

50. The Plaintiff's Contract further details the conditions that must be met to terminate Plaintiff from employment:
*"If the cause for termination is other than Meisner's being able to fulfill the duties, responsibilities, and essential functions of his position, the Board shall provide written notice to Meisner with the reasons for his proposed termination. The Board shall provide Meisner with an opportunity to be heard pursuant to G.L. c. 30A, S. 21(a)(1). Should the*

> *Board decide to terminate Meisner for cause, as outlined in his Section 7(A), any accrued vacation time due and owning at the time of termination shall be paid to Meisner."*

51. During the second week of November 2018, the Plaintiff and his wife went to Florida for vacation. Upon his return to work, Chief Saloio informed the Plaintiff that he has been told "a lot of bad things about the Plaintiff," but did not provide any further information.

52. Chief Saloio then began to call the Plaintiff into his office on a daily basis to tell the Plaintiff he has been hearing 'fodder' about him and that he believed that the Plaintiff was "bad news" and "dangerous."

53. Throughout the ensuing three months that the Plaintiff served under the supervision of Chief Saloio, there were numerous inappropriate comments made by Defendant Saloio to the Plaintiff. The Plaintiff subsequently filed a pro se complaint with the MCAD regarding these issues and interactions.

53. The day before Thanksgiving 2018, Chief Saloio called the Plaintiff into his office and told him that his position as Lieutenant was being eliminated and that he (Plaintiff) had to make a decision.

54. The Plaintiff had no prior notice of the Town's intention to eliminate his position as a Lieutenant. Defendant Saloio explained that the "decision" to be made by the Plaintiff was, either to accept an immediate demotion to the rank of Sergeant, or "not have a job" within the Tisbury Police Department.

55. The Plaintiff had no other work experience other than as a police officer. The Plaintiff had also just learned that his wife was pregnant for the first time after years of infertility.

56. Chief Saloio demanded an immediate response from the Plaintiff and failed to comply with any of the terms or conditions of the Plaintiff's previously described contractual agreement with the Town. See Paragraphs 49 and 50.

57. The Plaintiff was very surprised and confused by the threat of the loss of his job and sudden demotion to the rank of Sergeant because there had been no previous discussions of his Lieutenant's position being in jeopardy or the Town's intention to eliminate the position.

58. No disciplinary actions had been commenced at that time and there was no written or oral notice from Chief Saloio of any allegation of wrongdoing by the Plaintiff.

59. The Plaintiff avers that the threat made by Defendant Saloio that the Plaintiff either accept the immediate demotion to the rank of Sergeant or "not have a job" constituted economic coercion and a threat to and interference with his right to continued employment with the Town of Tisbury.

60. The Plaintiff further avers that Chief Saloio knew that the Plaintiff would not be able to secure future law enforcement employment within Martha's Vineyard if the Plaintiff was terminated by the Town of Tisbury.

61. Chief Saloio took the demotion notice from the Plaintiff and then stated, "I'm probably going to regret putting you into the union, but I'd rather have you inside the tent pissing out (as a union member) than have you outside the tent pissing in."

62. The Plaintiff was stunned and embarrassed by the involuntary change in his rank from Lieutenant to Sergeant and subsequently informed his family he had been demoted by Defendant Saloio.

63. The Town of Tisbury is a small community within the island of Martha's Vineyard, where most residents know each other on a personal basis. The Plaintiff's wife is also well known and respected within the community as well as within Martha's Vineyard.

64. The Plaintiff was further embarrassed by the Defendant's public announcement of his demotion during the course of a Select Board meeting. The Plaintiff's demotion was subsequently published in the local newspaper as a result of its announcement at the Select Board meeting. During this Select Board meeting, it was claimed by Defendants that the reason for the Plaintiff's demotion was due to the fact that the Town was currently exceeding their overtime budget.

65. Shortly after the Select Board Meeting and the subsequent reporting of Plaintiff's demotion in the local newspaper, Defendant Saloio specifically asked the Plaintiff if he was going to quit his job with the Tisbury Police Department. The Plaintiff refused to do so and told Defendant Saloio that he needed his job. The Plaintiff avers that the release of the information regarding his demotion during the Select Board meeting and the reporting of the demotion in the local newspaper was done with the intent of causing him and his family emotional distress and in an effort to further coerce him to resign from the Department.

66. Two days after the release of this information regarding the Plaintiff's demotion and its

publication in the local newspaper, the Plaintiff's wife Allison had a miscarriage.

67. The demotion of the Plaintiff to Sergeant and admission of the Plaintiff into the Tisbury Police Officer's union did have the resulting consequence of providing the Plaintiff with an additional basis of "just cause" protection of his continued employment with the Town of Tisbury as a Sergeant.

68. After involuntarily demoting the Plaintiff from Lieutenant to Sergeant, Defendant Saloio subsequently called the Plaintiff into his office and suddenly changed the "terms" of the demotion to Sergeant.

69. At this meeting, Defendant Saloio stated to the Plaintiff, 'I'm not making you a Sergeant. I'm making you an "**acting**" Sergeant. I just made a policy that requires a testing process, you will have to go through the process." Chief Saloio then stated, "What do you have to say? Are you going to quit?"

70. The Plaintiff refused to quit and accordingly, the Union for the Tisbury Police Officers filed a grievance on behalf of the Plaintiff for the attempt by Defendant Saloio to change the demotion from the rank of Sergeant to an "acting" Sergeant.

71. The distinction between demoting the Plaintiff from the rank of Lieutenant to Sergeant, opposed to an "acting" Sergeant is that, as an "acting" Sergeant, the Plaintiff would be considered a probationary employee and have no just cause protection for termination by the Defendants.

72. The Plaintiff further avers that the Defendant Saloio was fully aware that there was no legitimate "just cause" for the Plaintiff's termination, let alone for any discipline to be imposed. In fact, Defendant Saloio was quoted in the local newspaper as stating, that the Plaintiff's job performance was not part of the equation in the decision to demote the Plaintiff. The Plaintiff alleges that Defendant Saloio subsequently altered the demotion to an "acting" Sergeant position so he could fire him as a "probationary" employee without just cause protection.

73. During this same time period, Defendant Saloio called the Plaintiff into his office and stated, "Rumor has it that you have hired an attorney, did you? Well it doesn't matter, it's not going to change anything or help you, and I don't care about your notes you are

keeping[1]."

74. The Plaintiff felt intimidated by these comments and considered them to be a further attempt to prevent or interfere with his decision to seek legal assistance and seek redress before an independent agency.

75. When the Plaintiff did not agree to quit, Chief Saloio falsely accused him of committing a crime. Chief Saloio stated to the Plaintiff that he (Saloio) had been given some very disturbing news regarding the Plaintiff. Saloio told the Plaintiff that he had received a complaint from a member of the Oak Bluffs Police Department that the Plaintiff had allegedly been monitoring conversations through the Tisbury Police Department's video camera system.

76. The unconsented to interception of oral communications is a crime in Massachusetts. M.G.L. c. 272, section 99.

77. When Chief Saloio told the Plaintiff that he had "committed a crime," Saloio then demanded that the Plaintiff answer whether the Plaintiff had monitored conversations within the department. The Plaintiff stated unequivocally that he had not done anything of the sort, nor did he ever have the ability to do so.

78. Although Chief Saloio alleged that the Plaintiff had "committed a crime," he then said to the Plaintiff that he would "let it slide, because he (Chief Saloio) didn't want the Plaintiff to confront his accuser."

79. No further investigation was ever conducted or charges brought by Chief Saloio for this alleged "crime."

80. In a further attempt to force the Plaintiff to quit his job, Chief Saloio changed the Plaintiff's work schedule, the hours of the Plaintiff's shifts, the Plaintiff's days off and then required the Plaintiff to work double shifts.

81. Chief Saloio then added patrol functions to the Plaintiff's daily activities. He then had Plaintiff cover the front desk, do administrative assistant work, as well as all the Plaintiff's previous assignments. Chief Saloio then informed the Plaintiff that he wanted Plaintiff to be on the hiring board for new applicants to the police department.

---

[1] The Plaintiff had not hired an attorney at this juncture, but had filed a pro se complaint with the Massachusetts Commission Against Discrimination.

82. The Plaintiff did as asked and assisted with the new hire applications and interviews, along with two other Tisbury officers. At the conclusion of the interviews Chief Saloio asked the three officers for their opinions and concerns about the applicants.

83. The Plaintiff indicated that one of the applicants had admitted to sexually harassing a female co-worker at a previous place of employment and had been suspended. Chief Saloio then began to yell loudly and aggressively at the Plaintiff in the presence of the other two officers. Defendant Saloio stated, "I don't know what your problem with him is. You need to figure it out. You are one to talk. You have a horrible reputation here. You need to worry about yourself."

84. The allegations by Chief Saloio regarding the Plaintiff's reputation were patently untrue. The Plaintiff has an outstanding reputation within the community and has never been disciplined in the approximately (6) year time period he has been employed by the Tisbury Police Department.

85. The following day, Chief Saloio apologetically stated to the Plaintiff, "that is how we do things in Sturbridge, we scream at each other and then go to lunch afterwards."

86. The Plaintiff avers that he has never worked in a similar hostile environment in his 26 years as a police officer. The Plaintiff has never been a party to, or accepted that type of conduct by any officer, particularly a supervisor, let alone a Chief of Police.

87. Plaintiff further alleges that Chief Saloio deliberately belittled the Plaintiff in front of the two other Tisbury officers for the purpose of demeaning him and encouraging him to quit his position in the Department.

88. In early January 2019, Chief Saloio called the Plaintiff into his office and asked if he had recently spoken with former Tisbury Officer Kindia Roman. The Plaintiff told Chief Saloio that he had talked to Ms. Roman just prior to the holidays. Chief Saloio acted surprised by the Plaintiff's answer and told the Plaintiff, "You better not talk to her anymore."

89. The Plaintiff explained to Chief Saloio that Ms. Roman and her family were friends of the Plaintiff, his family and his wife. Chief Soloio responded, "Well attorneys representing the Town are going to call you and talk to you about this (Ms. Roman's lawsuit) case. It would be in your interest to be supportive of the Town." The Plaintiff told Chief Saloio that, he "would be happy to talk to the attorneys, but, he would only tell them the truth."

90. On January 10, 2019, the Plaintiff was interviewed by an attorney representing the Town of Tisbury in Ms. Roman's complaint to the MCAD[2]. The Plaintiff was supportive of Ms. Roman's position and the allegations she made in her complaint against Detective Max Sherman and the Town of Tisbury.

91. On January 16, 2019, Chief Saloio instructed the Plaintiff to stay late for an extra hour. At 4:30 pm, Chief Saloio called the Plaintiff into his office and ordered Plaintiff to turn over his service weapon to Officer Silvia. Chief Saloio then ordered the Plaintiff to give him his badge and ID card, along with any keys because he (Plaintiff) was " all done."

92. The Plaintiff asked if he (Soloio) was firing me, and Chief Saloio said, "yes."

93. The Plaintiff then asked what the reason was, and Chief Saloio responded, "We're not going to talk about it, you are probationary." Chief Saloio then continued, "You will be contacted by HR and we will send you your stuff." The Plaintiff was then summarily escorted out of the building without his badge or firearm, but still wearing a uniform and without his personal belongings.

94. The Plaintiff alleges that his firing in this manner by Chief Saloio was without any justification and was done to personally humiliate the Plaintiff in front of his work colleagues.

95. The Plaintiff further alleges that Chief Saloio's claim that Plaintiff was a "probationary employee" was done in an attempt to justify the so-called "reason" he was terminated. The Plaintiff alleges that this stated reason was pre-textual and a cover up for the true retaliatory basis of his firing.

96. The Plaintiff further avers that the temporal proximity of his interview with the Town's attorney and his verbal support of former officer Roman in her MCAD lawsuit against the Town of Tisbury was the retaliatory basis for his termination as a member of the Tisbury Police Department.

97. The Defendants then, in an effort to further embarrass the Plaintiff and his wife, leaked the information regarding the Plaintiff's firing to both local newspapers on Martha's Vineyard.

---

[2] The Plaintiff hereby incorporates, for all purposes, the information contained in Ms. Roman's complaint and rebuttal statement to the MCAD against the Town of Tisbury.

98. As stated, on January 17, 2019, the Plaintiff's firing by the Town of Tisbury and Chief Saloio was announced in both papers. No reason for his termination was given, leading to rampant speculation that the Plaintiff had committed some serious violation of the Departmental rules or worse.

99. Shortly thereafter, Town Administrator Grande announced at a public meeting of the Board of Selectmen, that the Plaintiff's position as Emergency Management Director was vacant and needed to be filled.

100. There have been no meetings or due process provided to the Plaintiff with regard to his position as the Town of Tisbury Emergency Manager position. The Town simply publicly announced a vacancy, without regard to providing a reason for the Plaintiff's removal from that position.

101. The grievance filed by the Union on behalf of the Plaintiff was attended by Union attorney Daniel Fogerty. Town Administrator Jay Grande told Attorney Fogarty that the Plaintiff was not welcome back to the police department and would not be re-hired.

COUNT ONE- VIOLATION OF CIVIL RIGHTS 42 U.S.C., §1983 v.
Defendants Town of Tisbury and Defendant Mark Saloio, in his official and individual capacities

102. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

103. Defendant Town of Tisbury and Defendant Mark Saloio, in his official and individual capacities, and under color of law, attempted to interfere with, and did interfere with the Plaintiffs' exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Massachusetts Declaration of Rights, including, but not limited to, his right to free speech, right to participate in concerted union activity, right to Procedural and Substantive Due Process, right to continued employment and the right to participate in and petition and seek redress from Governmental abuse without retaliation.

104. As a consequence of the Defendants' actions, the Plaintiff has suffered and continues to suffer economic loss, fear and emotional distress, loss of status in his community, loss of reputation and promotional opportunities.

105. Plaintiff seeks compensatory as well as punitive damages against the Defendants for their actions, as well as reasonable attorney's fees and such other relief as the court deems appropriate.

COUNT TWO - WHISTLEBLOWER (M.G.L. ch. 149, § 185), b (1) and b (3)
v. Town of Tisbury

106. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

107. Plaintiff, through various means and measures, reported, objected to, refused to participate in, filed written complaints and reports about what he reasonably believed were ongoing violations of law, and/or rules and regulations within the Tisbury Police Department including, but not limited to, violations of the collective bargaining agreement by Defendants, multiple illegal and unethical actions by members of the Department, including but not limited to, the wrongful interference by member(s) of the Department with officer Roman's job application as well as her complaint filed with the Massachusetts Commission against Discrimination.

108. The Defendants retaliated against Plaintiff for reporting, disclosing, objecting to and/or refusing to participate in an activity, policy or practice which Plaintiff reasonably believed was in violation of a law and/or a rule or regulation promulgated by law, in violation of the Massachusetts Whistleblower statute, G.L.c.149 §185, b (1) and b (3).

109. Plaintiff has been retaliated against for reporting and objecting to Defendants' actions and as a result of raising these issues was subsequently subjected to wrongful demotion, disparate treatment, a hostile work environment, threats of discipline, retaliatory acts, and denial of promotion, loss of income and ultimately termination from his employment.

110. As a consequence of the Defendants' actions as stated above, Plaintiff suffered and continues to suffer damages, including, but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, and emotional and mental distress.

WHEREFORE, Plaintiff demand judgment against the Defendants on Count II, plus interest and costs of this action, treble damages and reasonable attorneys' fees as provided under G.L.c.149, Section 185.

COUNT THREE – MASSACHUSETTS CIVIL RIGHTS (M.G.L. ch. 12, §§ 11H, I)
v. Defendant Mark Saloio

111. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

112. The Defendant, Mark Saloio, did, by the actions stated above, attempted to interfere with, and did interfere with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States, and the Constitution and laws of the Commonwealth of Massachusetts, by threats, intimidation and coercion, including the Plaintiff's right to free speech, his protected right to participate in union activity, his right of continued employment and right to participate in the Due Process of law, including, but not limited to, his right to participate in, without retaliation, Officer Roman's complaint filed with the Massachusetts Commission against Discrimination and the Plaintiff's support thereof, as well as the wrongful interference by member(s) of the Department with officer Roman's job application.

113. The Defendant Chief Saloio, attempted to and did interfere with the Plaintiff's above stated rights by means of threats of discipline, economic coercion and retaliatory intimidation in an attempt to silence the Plaintiff's rights of free speech, right to participate in union activities, rights of continued employment and right to participate in the Due Process of law, including, the right to participate in and petition and seek redress from Governmental abuse without retaliation.

     WHEREFORE, Plaintiff demand judgment against the Defendants on Count III, plus interest and costs of this action, and reasonable attorneys' fees as provided under M.G.L. c. 12, Section 11I.

COUNT FOUR
Breach of Contract (Collective Bargaining Agreement)
Town of Tisbury, Board of Selectmen

114. The Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through 113 of his Complaint with the same force and effect as if expressly rewritten herein.

115. The Plaintiff was a full time police officer and considered an employee, holding the rank of Sergeant within the Town of Tisbury - Tisbury Police Association Collective Bargaining Agreement at the time of his termination.

116. The Tisbury Police Association Collective Bargaining Agreement provides for termination for "Just Cause" only.

117. The Defendants wrongfully terminated the Plaintiff without "just cause" in violation of the Tisbury Police Association Collective Bargaining Agreement.

118. As a result of the defendants' actions the plaintiff suffered damages and continues to suffer damages, including economic loss and emotional distress.

WHEREFORE, Plaintiff demands judgment against the Defendants on Count IV, plus interest and costs of this action.

## COUNT FIVE
## Good Faith and Fair Dealing
## Town of Tisbury, Board of Selectmen

119. The Plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Eighteen of his Complaint with the same force and effect as if expressly rewritten herein.

120. There exists in Massachusetts an implied covenant of good faith and fair dealing in the employment relationship between the Plaintiff and the Town of Tisbury.

121. Through their above-described actions, the Defendant Town of Tisbury breached that covenant with respect to the Plaintiff through conduct that was intentional, malicious and without proper or legitimate purpose according to law.

122. Through their above-described actions, Defendants injured the Plaintiff's rights to receive the benefit of his employment relationship with the Town of Tisbury.

123. As a direct and proximate result of Defendants' actions, the Plaintiff suffered damages, including loss of income and emotional distress.

WHEREFORE, Plaintiff demands judgment against the Defendants on Count V, plus interest and costs of this action.

## COUNT SIX
## Interference with Advantageous Relations
## Town of Tisbury and Mark Saloio

124. The plaintiff repeats and reavers the allegations contained in Paragraphs One through One Hundred Twenty-three of his Complaint with the same force and effect as if expressly rewritten herein.

125. The Plaintiff was a full time police officer and considered an employee under the Town of Tisbury - Tisbury Police Association Collective Bargaining Agreement.

126. Prior to the above-described actions of the Defendants, the Plaintiff enjoyed an advantageous relationship with the Town of Tisbury through employment as a police officer and possessed not only the right and capacity to continue that employment unfettered from frivolous and meritless charges, but to seek and secure promotional opportunities, as well as other career advancement opportunities.

127. As a result of the above-described actions of the Defendants, the Plaintiff's ability to maintain, seek and to secure those opportunities within the Tisbury Department was damaged significantly and ultimately he was wrongfully terminated.

128. The defendant's actions were intentional and involved improper motive and interfered with the plaintiff's advantageous contractual relations.

As a result of the defendants' actions the plaintiff suffered damages and continues to suffer damages, including loss of income, emotional distress and promotional opportunities.

WHEREFORE, Plaintiff demands judgment against the Defendants on Count VI, plus interest and costs of this action.

<u>COUNT SEVEN</u>
<u>Breach of Contract</u>
<u>Town of Tisbury, Board of Selectmen, Chief Mark Saloio</u>

129. The Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through 129 of his Complaint with the same force and effect as if expressly rewritten herein

130. The Plaintiff was employed as a full time police officer and held the rank of Lieutenant with the Town of Tisbury for a period of six (6) years. The terms of the Plaintiff's contractual relationship with the Town were the subject of a written agreement. The Town was obligated to comply with those terms prior to any change in the status of, or termination of, the Plaintiff's employment.

131. The Defendants failed to comply with its contractual agreement with the Plaintiff and wrongfully demoted and subsequently terminated the Plaintiff without

"just cause" in violation of the terms and or in compliance with the requirements of its Contract with the Plaintiff.

132.     The Defendants breached the contract with the Plaintiff without justification and in bad faith.

133.     As a result of the Defendants' actions, the Plaintiff suffered damages and continues to suffer damages, including economic loss and emotional distress.

WHEREFORE, the plaintiff, Eerik Meisner, prays as follows:

That the Court enter judgment in favor of the Plaintiff as to each and every cause of action in this complaint, singularly and in the collective;

That the Court enter judgment against the Defendants, in an amount to be determined at trial.

That the Court enter punitive or exemplary damages pursuant to statute.

That the Court order payment by the Defendant's of the Plaintiff's reasonable costs and attorneys' fees.

That the Court award compensatory damages against all Defendants jointly and severally;

That the Court reinstate the Plaintiff to the same position of Lieutenant held before the retaliatory action, or to an equivalent position.

That the Court reinstate the Plaintiff to any and all full fringe benefits and seniority rights he would otherwise have been entitled to. .

That the Court award such other further relief as this Court may deem necessary and appropriate.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS.

RESPECTFULLY SUBMITTED,

For the Plaintiff, Eerik Meisner,
By his attorney,

 /s/ Timothy M. Burke

Timothy M. Burke, BBO #065720
LAW OFFICES OF TIMOTHY M. BURKE
160 Gould Street, Suite 100
Needham, MA  02494
Tel:   (781) 455-0707
Fax:   (781) 455-8879

Certificate of Service

    I hereby certify that these documents were filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be mailed via first class mail to those registered as non-participants.

Dated:       08/14/2019          /s/ Timothy M. Burke